CORA B. CRONK, Plaintiff, *v.* FRANCES C. MILLSPAUGH and Others, Defendants.*

Supreme Court, Schuyler County, March 30, 1929.

*Arthur Ray Ellison,* for the plaintiff.

*Rogers & McManus* [*Charles E. McManus* of counsel], for the defendants.

A. L. KELLOGG, J.   The plaintiff contends that on the 1st day of April, 1928, she was the owner in fee and entitled to the possession of a farm situate in the town of Dix, county of Schuyler, and that the defendants Frances C. Millspaugh and Esther C. Millspaugh on that date unlawfully entered upon said premises and are now in possession of same, claiming title thereto; that thereafter the said defendants Millspaugh unlawfully leased or attempted to lease the said real estate to the defendants Fred Millspaugh and Earl W. Dean.   The plaintiff demands judgment against the defendants for the recovery of said lands in fee and the possession thereof, with damages for the unlawful withholding thereof.

The plaintiff is an elderly widow who was left the farm in question by her deceased husband.

The defendants Frances C. and Esther C. Millspaugh and their agents, after repeated negotiations with the plaintiff, agreed with her, both verbally and in writing, to purchase her said farm for the sum of $5,500 in cash, and pursuant thereto the plaintiff agreed to sell.   The defendants were generally represented by Stephen B.

Millspaugh and his statements were uniformly to the effect that the defendants above mentioned had or would have the moneys with which to pay cash for the farm, and it was upon such representations that the plaintiff at all times relied and acted not only in continuing the negotiations but in all she did.

With a chain of deception and cunning which might well receive the admiration of any crook, the agent Millspaugh spun his web of deceit so successfully that on March 17, 1928, when he signed a written statement that he would see that a mortgage of $5,500 given for the entire purchase price of the farm would be fully paid by May 15, 1928, the plaintiff did apparently give written authority to deliver a deed, but if she ever conferred upon the agent Everts authority to make such delivery, which is in grave doubt, it was never acted upon, and was subsequently absolutely revoked.

As a matter of fact the deed was never delivered to the defendants or any of them. There is no evidence in the case to show a delivery of the deed, except that which comes from the lips of Stephen B. Millspaugh. The plaintiff testified it was never delivered and the witness Everts gave evidence to the effect that he does not believe he delivered the deed to Millspaugh. And, in answer to a question by the court, Everts swore positively that the plaintiff did not hand the deed to Millspaugh. Everts testified he did leave the deed at the clerk's office for the clerk to hold until he came back after it, either possibly to record it or to make some other disposition of it. In other words, the deed at no time left the dominion of Everts as agent for the plaintiff, or passed out of his possession until he gave it back to the plaintiff who had signed it and left it with him to act for her.

The papers drawn by Everts were never read over and explained to the plaintiff and whether or not the plaintiff did understand or intend a transaction by which she was parting with a farm valued at $5,500, and taking back a mortgage for its full value, no part of which was made payable until the lapse of five years thereafter — whether or not she did understand or intend such transaction is a matter which only she can know, but no act or expression of hers has revealed any such understanding or intention. On the contrary we have a general line of conduct extending over several months, admitted by the defendants on the stand and in writing, holding themselves out as agreeing at all times to pay a cash consideration for the farm. Up to the present time, although the defendants Frances C. and Esther C. Millspaugh or the defendants to whom they leased said farm have been in possession thereof for over one year, the plaintiff has never received one dollar from them or either of them.

The fact that Millspaugh wanted Everts to turn the papers over to him, unsigned, to take to Geneva for the plaintiff's signature and advised the plaintiff not to have a lawyer; the fact that Millspaugh gave all preliminary instructions to Everts in plaintiff's absence and did not discuss the terms and conditions or explain the papers to plaintiff in the presence of Everts, and other facts, have an important bearing on the entire transaction.

The fact stands out in bold relief that the plaintiff did not know or understand she was taking a $5,500 mortgage back for the full value of the farm, and not made payable until after the lapse of five years.

The very essence of every legal contract is mutuality. It is the mutual consent of the minds of the parties concerned respecting some property or right that is the object of the stipulation or agreement which is essential to its validity. Whatever the plaintiff did with respect to the deed and mortgage in question, there was an entire lack of mutuality and understanding. Both of those papers are so honeycombed with fraud and deceit and deception that they must be declared null and void and set aside. No man in his right senses and not under a delusion would sign and execute such papers as the deed and mortgage in evidence under the circumstances as adduced upon the trial, and no honest and fair-minded man on the other hand would attempt to take them from the hand of this old lady. They violate not only the laws of equity but the golden rule: " Do unto others as you would that they should do unto you."

For the reasons stated, the plaintiff is entitled to the relief demanded in the complaint and the possession of the premises and real estate therein described, together with costs and disbursements of this action.

Findings and judgment accordingly.